44918.   FLOYD v. COLONIAL STORES, INC. et al.

SUBMITTED JANUARY 8, 1970—DECIDED MAY 13, 1970—
REHEARING DENIED JUNE 4, 1970.

*Moore & Morris, Charles E. Moore, W. Grady Morris,* for appellant.

*Greene, Buckley, DeRieux & Jones, Burt DeRieux, James A. Eichelberger, William M. Rich,* for appellee.

EBERHARDT, Judge. ■ The main question presented by this appeal is whether the negligence of Hodges, the driver of plaintiff's vehicle, if any, was imputable to the plaintiff-passenger as a matter of law, as contended by the defendants or was not, as contended by the plaintiff, or, if neither, whether there was a question for the jury. Defendants cite *Pollard v. Roberson,* 61 Ga. App. 465 (6 SE2d 203), *Rogers v. Johnson,* 94 Ga. App. 666 (96 SE2d 285), and *Morris v. Cochran,* 98 Ga. App. 786 (106 SE2d 836) for the proposition that if the owner of a vehicle is present in it at the time of the collision, the negligence of the driver will be imputed to him as a matter of law. It is urged that the only exception to this rule, and one which is not applicable to the instant case, is where the owner occupies a "subordinate role" to the driver and surrenders all control to him—e.g., stepsister/owner to stepbrother/driver (*Blount v. Sutton,* 114 Ga. App. 767 (152 SE2d 777)); deputy sheriff/joint owner to sheriff joint/owner-driver (*Archer v. Aristocrat Ice Cream Co.,* 87 Ga. App. 567 (74 SE2d 470)).

This is not an accurate statement of the rule. So far as we know it is nowhere held that the negligence of a driver is ipso facto imputable to the owner simply because he may be a passenger at the time of the collision. At most there is only a presumption, or inference, in the absence of evidence to the con-

trary, that the owner has the right to control the driver as his agent or servant and is therefore liable for the driver's negligence under the doctrine of respondeat superior, or is therefore chargeable with his negligence in the owner's action against a third party. See *Hightower v. Landrum,* 109 Ga. App. 510, 516 (136 SE2d 425); *Shapiro Packing Co. v. Landrum,* 109 Ga. App. 519 (5) (136 SE2d 446); Annot., 50 ALR2d 1281; 8 AmJur2d 123, 225, Automobiles and Highway Traffic, §§ 572, 674. Thus we held in *Trawick v. Chambliss,* 42 Ga. App. 333 (3) (156 SE 268): "Evidence that the defendant owned the automobile which caused the injury and was riding in it but not driving it at the time of the occurrence was sufficient to authorize the inference that the driver was the defendant's agent or servant, and that the defendant was thus in control of the operation of the vehicle." And in *Blount v. Sutton,* 114 Ga. App. 767, supra, a full court case with two judges dissenting and one judge not participating, we held that this inference applies only "where nothing else appears. When uncontradicted and unimpeached evidence is produced as to the real facts, the inference disappears, and does not create a conflict in the evidence so as to require its submission to a jury." To the same effect is *Brennan v. National NuGrape Co.,* 106 Ga. App. 709 (128 SE2d 81), a summary judgment case, as here.

This rule is similar to that provided in *Code* § 94-1108 (Ga. L. 1929, p. 315) that "proof of injury inflicted by the running of locomotives or cars of [railroads] shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the companies in reference to such injury," which the Supreme Court has held "casts upon the railway company the burden of the duty of producing some evidence to the contrary; and when that is done the inference is at an end. . ." *Seaboard A.-L. R. Co. v. Fountain,* 173 Ga. 593 (2b) (160 SE 789). To the same effect, see *Atlantic C. L. R. Co. v. Martin,* 79 Ga. App. 194 (53 SE2d 176), and citations. "If material to the issue between the parties, the uncontradicted testimony of an unimpeached witness can not in any case be arbitrarily disregarded by any tribunal, whether judge or jury, whose duty it is to consider the evidence and decide the issue in accordance

therewith. Where, therefore, as a result of proved facts, only a prima facie presumption arises that certain additional facts exist in favor of one party, and positive, unequivocal, and uncontradicted testimony is introduced in behalf of the other party, emphatically denying the facts thus presumed, such presumption is legally rebutted and can not prevail against such testimony." *Atlantic C. L. R. Co. v. Drake,* 21 Ga. App. 81 (4) (94 SE 65). "A presumption is an inference as to the existence of a fact not actually known, arising from its necessary or usual connection with others which are known." *Ivey v. State,* 23 Ga. 576, 582.[1] "When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful when, by the positive and uncontradicted testimony of unim-

---

[1]"There has been much erroneous thinking and more loose language in regard to presumptions. We read of presumptions of law and presumptions of fact, of conclusive presumptions and of disputable presumptions. In truth there is but one type of presumption in the strict legal meaning of the word, and that is merely a general rule of law that under some circumstances, *in the absence of any evidence to the contrary,* a jury is compelled to reach a certain conclusion of fact. But a presumption so declared by the law is only raised by the absence of any real evidence as to the existence of the ultimate fact in question. It is not in and of itself evidence, but merely an arbitrary rule imposed by law, to be applied in the absence of evidence, and whenever evidence contradicting the presumption is offered the latter disappears entirely, and the triers of fact are bound to follow the usual rules of evidence in reaching their ultimate conclusions of fact. As was once said, 'Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts.' Mockowik v. Kansas City, etc. R. Co., 196 Mo. 550 (94 SW 256, 262). The Supreme Court of South Dakota, in Peters v. Lohr, 24 S. D. 605 (124 NW 853), in discussing this question, used the following language [page 855]: '. . . A presumption is not evidence of anything, and only relates to a rule of law as to which party shall

preached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed." *Frazier v. Ga. R. & Bkg. Co.*, 108 Ga. 807 (1) (33 SE 996). And see *Life Ins. Co. of Ga. v. Lawler*, 211 Ga. 246 (1) (85 SE2d 1); *Emory University v. Bliss*, 35 Ga. App. 752 (134 SE 637).

In the instant case unimpeached and uncontradicted evidence was produced as to the relationship between plaintiff and Hodges, and the inference of agency disappeared, leaving the facts to control. Since plaintiff reserved no right under the bailment of his truck to Hodges to direct the time, manner, methods and means of Hodges' use of it in the performance of his obligation to deliver the horse, as contradistinguished from Floyd's (plaintiff) right to require results in conformity to the contract under which delivery was being made, Hodges occu-

---

first go forward and produce evidence sustaining a matter in issue. A presumption will serve as and in the place of evidence in favor of one party or the other until prima facie evidence has been adduced by the opposite party; but the presumption should never be placed in the scale to be weighed as evidence. The presumption, when the opposite party has produced prima facie evidence, has spent its force and served its purpose, and the party then, in whose favor the presumption operated, must meet his opponent's prima facie evidence with evidence, and not presumptions. A presumption is not evidence of a fact, but purely a conclusion. Elliott, Ev. §§ 91, 92, 93; Wigmore, Ev. §§ 2490, 2491." Seiler v. Whiting, 52 Ariz. 542, 548 (84 P2d 452).

Presumptions give way to reality when facts opposing presumptions are presented, as the term "presumption" signifies that which may be assumed without proof or taken for granted and is defined as something asserted as the self-evident result of human reason and experience. Gray v. Gray, 199 Ark. 152 (133 SW2d 874).

"The office of presumptions is not to overthrow admitted facts, but rather to supply the absence of facts. There can be no presumption against ascertained and established facts." Conway v. Supreme Council, Catholic Knights of America, 137 Cal. 384, 389 (70 P 223).

pied the position of a bailee, or of an independent contractor whose conduct was not imputable to plaintiff (*Young v. Kickliter*, 213 Ga. 42 (96 SE2d 605); *Johnson v. Brant*, 93 Ga. App. 44 (90 SE2d 587); *Weiss v. Kling*, 96 Ga. App. 618 (101 SE2d 178) and cases cited); and the fact that the plaintiff-owner was, on the invitation of Hodges, riding in the truck at the time of the collision does not alter the rule. *Pressley v. Wilson*, 116 Ga. App. 206 (156 SE2d 399). The fact that plaintiff unloaded the horse after the collision without Hodges' assistance does not show that plaintiff had interfered and assumed control of Hodges prior to that time so as to create the relationship of master and servant subsisting at the time of the collison. *Code Ann.* § 105-502 (5). The uncontradicted and unimpeached evidence is that plaintiff took no part in the borrowing and coupling of the trailer and the loading of the horse, nor did he make any

---

"A presumption is merely an inference of fact of more or less potency, which is sometimes indulged in the absence of evidence. Matter of Callahan's Estate, 142 Misc. 28, 36 (254 NYS 46), affirmed 236 App. Div. 814 (259 NYS 987), affirmed 262 N. Y. 524 (188 NE 48). Such an inference fades into nullity when confronted by uncontroverted proof to the contrary. . . In re Findlay, 253 N. Y. 1, 8 (170 NE 471)." In Re Goldman's Estate, 156 Misc. 817 (282 NYS 787, 791).

"In the case of Hanna v. McClave, 271 Mich. 133, 141 (260 NW 138, 140) the court said: 'The presumption, however, exists *only in the absence of evidence*, and does not serve at all when the issue . . . is tried out upon evidence.' (Emphasis added). See also, Patt v. Dilley, 273 Mich. 601 (263 NW 749).

"That the statement above quoted is the general rule may be seen by reference to 20 AmJur 163, Evidence, § 158, in which it is stated as follows: 'But a presumption will never be construed or defined in such a manner as to extend its application beyond the realm of reasonable probability or certitude. Accordingly, courts will not define presumptions in such manner as to imply superiority over established facts. *Where facts appear, presumptions recede. Thus, the necessity for resorting to presumptions disappears when there is direct and positive evidence upon the matter in issue.* (Emphasis added).'" In Re Guardianship of Breece, 173 Ohio St. 542, 554 (184 NE2d 386).

comments about the operation of the truck or the route to be followed. The mere fact that he had an interest in seeing that Hodges abide by his contract is not in itself sufficient to show a joint venture. *Fuller v. Mills*, 36 Ga. App. 357 (1) (136 SE 807); *Holland v. Boyett*, 212 Ga. 458 (93 SE2d 662); *Jones Mercantile Co. v. Copeland*, 54 Ga. App. 647 (3) (188 SE 586). Furthermore, even if the finding of one were authorized "[a] joint interest with another in the object and purpose of an automobile trip is not enough to render one liable for the negligent acts of the other in the operation of the automobile." *Duncan v. Crisp*, 68 Ga. App. 498, 502 (23 SE2d 515).

Hence the court erred in overruling plaintiff's motion for directed verdict on the counterclaim; in giving charges which were applicable only if Hodges' conduct were imputable to plaintiff as a matter of law; and in failing to give plaintiff's requests that any negligence of Hodges would not be imputed to him.

Enumerations of error 4—7 and 9—11 are meritorious. Since the evidence demanded a verdict for plaintiff on Colonial's counterclaim, the judgment below must be reversed with direction to the trial court to enter judgment in accordance with plaintiff's motion for directed verdict. *Code Ann.* § 81A-150 (e); *Peara v. Atlanta Newspapers, Inc.*, 120 Ga. App. 163 (169 SE2d 670).

■ The trial court sustained an objection to a question asked plaintiff on direct examination. However, the record was not perfected by counsel's disclosing to the court the expected answer, and hence enumeration 1 is without merit. *Mulcay v. Mulcay*, 223 Ga. 309 (2) (154 SE2d 607); *State Hwy. Dept. v. Willis*, 106 Ga. App. 821 (1) (128 SE2d 351); *Paulk v. Thomas*, 115 Ga. App. 436 (4) (154 SE2d 872); *Borochoff Properties, Inc. v. Howard Lumber Co.*, 115 Ga. App. 691, 696 (155 SE2d 651); *Peacock Constr. Co. v. Turner Concrete, Inc.*, 116 Ga. App. 822, 830 (159 SE2d 114).

■ Objection was made to a question asked of plaintiff by defendants' counsel as to whether Hodges and plaintiff had owned the horse together. Since in answering subsequent questions plaintiff testified that joint ownership of the horses had terminated and he alone owned the horse being transported,

so that no joint venture existed in regard to the transportation of the horse by virtue of joint ownership, the answer to the question was rendered irrelevant. See *West Lumber Co. v. Candler*, 46 Ga. App. 408 (167 SE 766); *Fleshman & Co. v. Collier*, 47 Ga. 253. Further, the objection was not renewed in light of the subsequent testimony, and no reversible error appears.

■ There was some confusion among counsel and the court as to whether *Code Ann.* § 68-1635 (a), setting forth the duties of the overtaking vehicle, had been charged in conjunction with § 68-1635 (b), the duties of the overtaken vehicle. The court and defense counsel were of the impression that the charge had been given, whereas it had not. Since this situation is not likely to occur on another trial, no ruling is made on enumeration of error No. 8.

■ The trial court omitted to give all of plaintiff's request No. 9 which explained to the jury the method of using the mortality tables and the annuity tables which were in evidence. The court charged on the use of the mortality tables but not on the use of the annuity tables. While it may be, as the court observed, that the jury doesn't pay attention to such long charges, or that they would not understand it if given, or that it is a lot of "mumbo jumbo" or "rigamarole," still the charge must be given if on another trial it is requested and authorized by the evidence.

■ In his closing argument counsel for defendants stated that plaintiff could have had Hodges present to testify as to what occurred, and that plaintiff could have taken his deposition and brought it to court. Plaintiff objected to the first statement on the grounds that the record showed that Hodges was a nonresident of the State and not amenable to subpoena (enumeration of error 13), and to the second on the ground that defendants' counsel could have taken the deposition as well as he (enumeration 14).

"Where in the trial of an action for damages against a railroad company for personal injuries the evidence as to the company's alleged negligence was conflicting, it was legitimate for the plaintiff's counsel to argue to the jury that the failure

of the defendant to introduce and examine as a witness one of its employees who was present at the time when the injuries in question were sustained was a circumstance from which an inference could be drawn that, if this employee had been introduced and examined, he would have testified to facts prejudicial to the defendant. This is so whether the counsel's contention as to this matter was, under all the circumstances in proof, well founded or not. . ." *Western & A. R. Co. v. Morrison*, 102 Ga. 319 (1) (29 SE 104, 40 LRA 84, 66 ASR 173). "The absence of a witness who is competent and cognizant of material and relevant facts is a proper subject of comment in the argument of counsel before the jury." *Morgan v. State*, 124 Ga. 442 (1) (52 SE 748); *City of Atlanta v. Feeney*, 42 Ga. App. 135 (2) (155 SE 370). "The failure to produce witnesses who are accessible to a party will authorize counsel of the opposite party to argue before the jury that, if they be in doubt as to the truth of the transaction, they would be authorized to infer that if the absent witness had testified, the testimony would have been prejudicial to the party who might most easily have produced them." *Southern R. Co. v. Acree*, 9 Ga. App. 104 (2) (70 SE 352). Accord: *Adkins v. Flagg*, 147 Ga. 136 (2) (93 SE 92); *Gulf Life Ins. Co. v. LeCroy*, 181 Ga. 243, 253 (182 SE 378); *Miller v. Coleman*, 213 Ga. 125 (6) (97 SE2d 313). However, where it does not appear that the witnesses were known to the non-producing party, or that he had the power to produce them, or that the witnesses were competent, their failure to testify is not a proper subject matter of argument by counsel. *Daughtry v. Ga. Power Co.*, 61 Ga. App. 505, 514 (6 SE2d 454); *Knox v. State*, 112 Ga. 373 (2) (37 SE 416) (witness was a "little girl"); *James v. State*, 223 Ga. 677 (5) (157 SE2d 471) (witness was wife of defendant in criminal case and hence not compellable to give testimony).

In the instant case the witness was a resident of Pennsylvania and not amenable to subpoena. See *Code Ann.* § 38-801 (e). Hence his failure to testify in person was not a proper subject matter of argument by counsel. Cf. *James v. State*, 223 Ga. 677 (5), supra. See also *Brothers v. Horne*, 140 Ga. 617 (3)

(79 SE 468). However, no reason appears why the argument as to depositions was improper, especially since. Pennsylvania has adopted the Uniform Foreign Depositions Act (9B ULA; 28 Penn. Stats. §§ 31-33).[2] Counsel's recourse in this situation was not in objecting to the argument, but in counterargument. *Richmond & Danville R. Co. v. Garner*, 91 Ga. 27 (1) (16 SE 110); *Macon R. &c. Co. v. Mason*, 123 Ga. 773 (3) (51 SE 569); *Morgan County v. Glass*, 139 Ga. 415 (5) (77 SE 583); *Green v. State*, 65 Ga. App. 754, 756 (16 SE2d 438). For example he might argue that the fact that he called only one of two witnesses who had an equal opportunity to know the facts in issue does not authorize an inference that the other witness would have testified differently; that his testimony would have been expensive to obtain and merely cumulative; that the claim was satisfactorily proved without his testimony; that he was equally accessible to the opposite party; and that it was as reasonable to expect the opposite party to take his testimony.

---

[2]*Caveat:* "It is one thing for an attorney to contend that 'such and such' a proposition is true, or that 'such and such' an inference is deducible from a given state of facts or circumstances, and quite a different thing for the judge to inform the jury that the positions taken by the attorney are correct." *Western & A. R. Co. v. Morrison*, 102 Ga. 319, 322, supra. Thus while counsel may argue to the jury that a presumption adverse to the opposite party arises from his failure to introduce an available witness, it may be error for the court to so charge the jury. See, e.g., *Weinkle v. Brunswick & W. R. Co.*, 107 Ga. 367, 372 (33 SE 471); *Central of Ga. R. Co. v. Bernstein*, 113 Ga. 175, 179 (38 SE 394); *Southern Express Co. v. B. R. Electric Co.*, 126 Ga. 472, 477 (55 SE 254); *Howard v. Obie*, 190 Ga. 394 (9 SE2d 666); *Citizens Nat. Life Ins. Co. v. Ragan*, 13 Ga. App. 29 (6) (78 SE 683); *Bank of Emanuel v. Smith*, 32 Ga. App. 606 (124 SE 114); *Atlanta Baggage &c. Co. v. Atlanta Taxicabs, Inc.*, 104 Ga. App. 89, 91 (121 SE2d 175); *Bynes v. Stafford*, 106 Ga. App. 406 (4) (127 SE2d 159); Green, Georgia Law of Evidence, 107, § 32 (1957).

Enumeration of error 13 is meritorious; enumeration 14 is without merit.

*Judgment reversed with direction to enter judgment for plaintiff on defendant's counterclaim; new trial granted on main claim. Bell, C. J., Jordan, P. J., Hall, P. J., and Quillian, J., concur. Whitman, J., concurs in the judgment. Pannell, Deen and Evans, JJ., dissent.*

PANNELL, Judge, dissenting. I dissent from the ruling in Division 1 of the majority opinion on the authority of *Whiddon v. Hall,* 155 Ga. 570 (6, 7) (118 SE 347). That case involved the question of the delivery of a deed. Headnotes 6 and 7 read as follows: "Presumptions in favor of the delivery of a deed arising from its possession by the grantee, its due recordation, its attestation by an officer, and the possession of the premises conveyed under the deed, are evidence of delivery; and, while these presumptions are rebuttable ones, the evidence of an unimpeached witness that the deed was not delivered raises a conflict between such presumptive evidence of delivery and such direct evidence of nondelivery, which can only be decided by the jury, as it can not be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by direct evidence. The court erred in directing a verdict for the claimant, under the evidence." Page 577 of the opinion reads as follows in referring to the presumptions and the so-called uncontradicted testimony: "Again, this deed was recorded. From this, a presumption arises that it had been duly delivered to the grantee. *Parrott v. Baker,* 82 Ga. 364 (9 SE 1068). The record of a deed is proof of delivery. *Fletcher v. Horne,* 75 Ga. 134. The fact that a deed was attested by a proper officer and purported on its face to have been delivered raises a presumption of delivery. *Bourquin v. Bourquin,* 110 Ga. 440 (35 SE 710). Possession of a deed by a grantee is presumptive evidence of its delivery. *Rushin v. Shields,* 11 Ga. 636 (56 AD 436); *Black v. Thornton,* 39 Ga. 361. The delivery of a deed may be inferred from possession of the land conveyed. *Jordan v. Pollock,* 14 Ga. 145. Here were four presumptions in favor of the delivery of this instrument. From any one of them the inference could be

drawn that it had been delivered. They were substantive evidence of its delivery; but it is insisted that they were rebuttable presumptions, which were fully rebutted by the uncontradicted testimony of the attorney, who drew the deed, that it had been left with him in escrow, and that its possession had been fraudulently obtained from him by the agent of the vendee, by means of the promise hereinbefore set out. It is urged that the unimpeached testimony of the attorney can not be arbitrarily and capriciously disregarded by court or jury. Where a disinterested witness, who is in no way discredited by other evidence or his own, testifies from his own knowledge to a fact which is not in itself improbable or in conflict with other evidence, the witness is to be believed, and the fact testified to is to be accepted as legally established. In re Miller, 49 Ore. 452 (90 P 1002, 124 ASR 1051). It can not be said, as a matter of law, that the jury is bound to accept evidence as true, although not contradicted by direct evidence. Cobe v. Coughlin Hardware Co., 83 Kan. 522 (112 P 115, 31 LRA (NS) 1126); Yonkus v. McKay, 186 Mich. 203 (152 NW 1031, AC 1917E, 458); Elwood v. W. U. Tel. Co., 45 N. Y. 549 (6 AR 140). The credit of this witness was for the jury. There were circumstances which the jury could weigh in determining the weight to be given his testimony. The transaction culminating in the execution of this deed took place in 1896. The witness was testifying in 1920. The witness admitted delivering to the agent of the vendee this deed in violation of the agreement by which it was lodged with him in escrow, although under circumstances relieving him from intentional wrong-doing. He further testified that the agent of the vendee had performed the most onerous terms and conditions, the performance of which would entitle him to the possession of the deed. The witness took no steps to recover the deed from the vendee. The claimant took no action to recover the deed or possession of the premises from her vendee, who went into possession under the deed, and remained in possession for five or six years and up to her death. The jury could consider these and other circumstances appearing in the evidence,

in determining the weight they would give to the testimony of this witness."

In my opinion, this case stands for authority that the presumption or inference itself in the present case is a part of the evidence and is never, as a matter of law, overcome by the other "uncontradicted" testimony. The inference is drawn in the present case where the facts authorizing it appear *and, where these facts alone appear, the inference is demanded as a matter of law.* Where counter evidence is offered, the inference is still there and may be considered by the jury in arriving at its verdict. The thing that disappears is the demanded inference which will authorize the direction of a verdict based thereon. See my dissent in *Blount v. Sutton,* 114 Ga. App. 767 (152 SE2d 777).

"Presumptions are either of law or of fact. The former are conclusions and inferences which the law draws from given facts. The latter are exclusively questions for the jury, to be decided by the ordinary test of human experience." *Code* § 38-113. The inference, such as that in the present case, is similar to the inference against suicide, and as was said in *Templeton v. Kennesaw Life &c. Ins. Co.,* 216 Ga. 770, 773 (119 SE2d 549): "In a case such as we are dealing with here, the only place the presumption vanishes is in the jury room, and the time it vanishes is when the jury, in consideration of all the facts and circumstances, determines that the preponderance of the evidence is against" the presumption; "and where that decision is arrived at, the presumption . . . like all other circumstances and inferences in favor of accident, vanishes."

DEEN, Judge, dissenting. ■ Leaving out the conclusions of the interested parties Floyd and Hodges the following appears: the parties were joint owners of certain horses; they agreed to trade interests in such manner that Floyd would be sole owner of one horse; as part of the agreement this horse would remain with Hodges (who had permission to ride it in return for feeding it) until Hodges left, then to be delivered to Floyd. Pursuant to this agreement Floyd took his truck over to Hodges' place; Hodges borrowed a neighbor's trailer and put the horse in it and hitched it up; Hodges and Floyd set out with the

horse with Hodges driving Floyd's car; there was a collision; Hodges remained at the place of impact and Floyd took the horse and truck on to the stable. At the time of the initial agreement it was known that Hodges was leaving the State and it was obviously necessary for the joint owners to make a disposition of the property mutually agreeable to them.

"Broadly, there is a joint enterprise or adventure when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control, provided the arrangement does not establish a partnership. . . There must be not only a joint interest in the objects and purposes of the undertaking, but also a right, express or implied of each member to the joint venture to direct and control the conduct of the other." *Security Development &c. Co. v. Williamson,* 112 Ga. App. 524 (145 SE2d 581). Although this is a contract case, the joint enterprise theory of agency is frequently applied where the "profit" is not pecuniary, and where the joint control arises not from agreement but from the mere fact that both parties assumed to act in the premises. Here Floyd initiated the project of returning *his* horse to *his* premises with *his* automobile (Hodges driving) in *his* presence and he actually carried the trip to its conclusion. What constitutes a joint enterprise is usually a jury question, and if it is applicable there is a mutual agency between the parties. *Bowman v. Fuller,* 84 Ga. App. 421 (66 SE2d 249). I think there is a jury question as to joint liability. This is as consistent with the objective facts as the testimony of the parties that Hodges was merely "going along" with Floyd to be sure that Floyd fulfilled his contract. I think the language in *McCurry v. Bailey,* 224 Ga. 318 (162 SE2d 9) is apposite: "Does this contradiction yield to determination as a matter of law, or rather does it call for a jury verdict of men who are acquainted with the facts of life? We unhesitatingly hold that such a conflict is beyond the reach of mere judicial decision and can be resolved only in the American way—by the verdict of 12 jurors. The only human resolution of such conflicts can, under our jurisprudence, be made by a jury who alone can impeach, who alone can judge credibility, and who alone can decide issues of fact."

■ As to the disappearance of the "presumption" in this case, I also hesitate to adopt categorically all that is said on the subject in the majority opinion. The Supreme Court reversed us in a similar holding (relating to the evidence necessary to rebut the presumption against suicide) by saying: *"The only place the presumption vanishes is in the jury room,* and the time it vanishes is when the jury, in consideration of all facts and circumstances, determines that the preponderance of evidence is against" it. *Templeton v. Kennesaw Life Ins. Co.,* 216 Ga. 770 (119 SE2d 549). (Emphasis supplied).

I think the judgment should be affirmed.

I am authorized to state that Judge Evans concurs in this dissent.