316 Ga. 808
FINAL COPY

S22G1050. MIDDLETON v. THE STATE.

Boggs, Chief Justice.

Patrick Middleton filed a motion to suppress evidence obtained during a search by Officer Amanda Graw of the Kingsland Police Department ("KPD"), arguing that she did not have authority to stop or search him because she was outside the territorial jurisdiction of the KPD. Officer Graw claimed that she did have authority to perform the stop and search because she had been deputized by the Camden County Sheriff's Office ("CCSO") seven years earlier. After the trial court granted the motion to suppress, the State appealed. The Court of Appeals reversed, concluding that Officer Graw had presented sufficient evidence of her deputization. See *State v. Middleton*, 363 Ga. App. 851 (872 SE2d 920) (2022) ("*Middleton I*"). We granted Middleton's petition for certiorari to consider whether the trial court erred in its ruling. We vacate the Court of Appeals' opinion with direction that it vacate the trial court's order and

1

remand the case to the trial court with direction to clarify its basis for ruling that the search and seizure of Middleton was unlawful.[1]

1. On February 15, 2020, KPD Officer Graw stopped Middleton's vehicle while outside Kingsland city limits in Camden County. After smelling the odor of marijuana, Officer Graw conducted a search of Middleton's vehicle, found a controlled substance, and arrested him. Prior to trial, Middleton asked the trial court to suppress evidence obtained during the search because Officer Graw, as a KPD officer, did not have authority to make a traffic stop outside Kingsland city limits. At a motion-to-suppress hearing, Officer Graw testified that she was employed by both the KPD and CCSO by virtue of having "been deputized by the Camden County Sheriff's Office since 2013" while riding along with CCSO deputies. She also testified that she had never worked a paid shift as a CCSO deputy or received a paycheck from the CCSO.

The trial court granted Middleton's motion to suppress under

---

[1] We thank the Attorney General of Georgia, the Georgia Association of Criminal Defense Lawyers, and the Prosecuting Attorneys' Council of Georgia for their briefs amicus curiae.

OCGA § 40-13-30, which provides that a municipality's law enforcement officers lack arrest powers outside of the municipality's city limits.[2] In its written order, the trial court concluded that "without a showing that extra-territorial jurisdiction was conferred upon Officer Graw by local or other law, Middleton's search and seizure were unlawful." In a footnote, the trial court stated that it was "not persuaded that Officer Graw's 2013 deputization by the Camden County Sheriff to act as an agent of the CCSO as part of her riding with CCSO deputies at the time changes its analysis, especially where the State has failed to introduce evidence as to the scope and/or content of said deputization."

The State appealed, and the Court of Appeals reversed, concluding that Officer Graw's testimony that she was deputized in

---

[2] OCGA § 40-13-30 provides:

Officers of the Georgia State Patrol and any other officer of this state or of any county or municipality thereof having authority to arrest for a criminal offense of the grade of misdemeanor shall have authority to prefer charges and bring offenders to trial under this article, provided that officers of an incorporated municipality shall have no power to make arrests beyond the corporate limits of such municipality unless such jurisdiction is given by local or other law.

2013 was sufficient to prove that she was acting within her jurisdiction as a deputy sheriff at the time of the arrest. *Middleton I*, 363 Ga. App. at 854-855. Middleton subsequently petitioned for certiorari, which this Court granted to review the question of whether the trial court erred in granting Middleton's motion to suppress evidence on the basis that Officer Graw was not engaged in the lawful discharge of her official duties at the time of the search and subsequent arrest.

2. We start with the scope of a deputy sheriff's official duties. "Sheriffs are authorized in their discretion to appoint one or more deputies." OCGA § 15-16-23. Deputy sheriffs in many ways stand in the same shoes as the sheriff. They are usually presumed to have the same powers as the sheriff. See *Jones v. Rountree*, 96 Ga. 230, 231 (23 SE 311) (1895) ("It is difficult to conceive why deputy-sheriffs should be appointed at all, if they are not at least competent to perform such duties pertaining to the sheriff's office as serving papers and making entries of such service."); *Veit v. State*, 182 Ga. App. 753, 756 (357 SE2d 113) (1987) ("A deputy sheriff is an agent

4

of the sheriff and in effecting the proper discharge of his duties is empowered with the same duties and powers."). Likewise, deputy sheriffs are required by statute to take the same oath that sheriffs do. See OCGA § 45-3-7 ("Before proceeding to act, all deputies shall take the same oaths as their principals take . . . ."). However, sometimes deputies are sworn in for a more limited role, such as to work on a particular case or cases. See OCGA § 45-3-7 (exempting deputies "employed in particular cases only" from having to file and enter the record of their oath with their principal's office).

Generally, "a public officer is presumed, until the contrary appears, to have properly performed his official duties and not to have exceeded his authority." *Fine v. Dade County*, 198 Ga. 655, 663 (32 SE2d 246) (1944). At a minimum, that presumption may be overcome if the party challenging the public officer's action persuades the court that the person being held out as a purported deputy does not in fact hold that position at the time of arrest. See id. Here, there is no dispute that Officer Graw was deputized in 2013 by the Camden County Sheriff; what is disputed is whether she was

still deputized when she arrested Middleton in 2020. The key question is thus one of scope: Was Officer Graw deputized for particular cases only, see OCGA § 45-3-7, or was the deputization general in nature? If the deputization was not restricted in scope, this case would present difficult questions about the duration and legal effect of that 2013 deputization, but those questions do not arise if in fact Officer Graw was deputized for particular cases only.

This initial question of scope is a question of fact. However, the trial court's order is ambiguous regarding whether it made a factual finding when it took note of "Officer Graw's 2013 deputization by the Camden County Sheriff to act as an agent of the CCSO as part of her riding with CCSO deputies at the time." It is not clear to us whether this statement rests on a factual finding that Officer Graw was deputized only for cases that arose as she was "riding with CCSO deputies," particularly in light of the trial court's later statement that "the State has failed to introduce evidence as to the scope and/or content of said deputization." If the trial court's order did depend on a factual finding as to the scope of Officer Graw's

6

deputization, that finding would be entitled to deference; alternatively, if the trial court's ruling was based on the duration and legal effect of a general deputization, it would be subject to de novo review. See *Nelson v. State*, 312 Ga. 375, 377 (863 SE2d 61) (2021) ("In reviewing a trial court's ruling on a defendant's motion to suppress evidence, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous; . . . [t]he trial court's legal conclusions are reviewed de novo, however.").

In light of this unresolved and threshold factual question, we vacate the Court of Appeals' opinion with direction that it vacate the trial court's order and remand the case to the trial court with direction that the trial court clarify whether its ruling that Officer Graw did not have legal authority to stop and search Middleton was based on the factual finding that Officer Graw had been deputized

for particular cases only.[3]

*Judgment vacated and case remanded with direction. All the Justices concur.*

---

[3] Although amici in their briefs suggest in the alternative that the trial court erred because suppression is not an appropriate remedy for extraterritorial arrest, the State conceded at oral argument that this issue was never raised in proceedings below. Thus, we need not address it here. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389) (2002) ("[A]bsent special circumstances, an appellate court need not consider arguments raised for the first time on appeal.") (cleaned up). See also *Harrell v. State*, 297 Ga. 884, 886 n.2 (778 SE2d 196) (2015) ("[T]he State did not raise any such issue below, before or after the trial court's ruling on the subject, [so] its ability to [rely on that argument] on appeal has been waived.").

Decided July 5, 2023.

Certiorari to the Court of Appeals of Georgia — 363 Ga. App. 851.

*Jonathan P. Lockwood, Brian C. Tyrone*, for appellant.

*Keith Higgins, District Attorney, Benjamin E. Gephardt, Assistant District Attorney*, for appellee.

*Jill A. Travis, Mazie L. Guertin, Hunter J. Rodgers; Peter J. Skandalakis, Robert W. Smith, Jr.; Christopher M. Carr, Attorney General, Wayne R. Beckerman, Assistant Attorney General, Stephen J. Petrany, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General*, amici curiae.